FILED & ENTERED

MAY 12 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY penning  DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>MJM Management, LLC<br><br>                              Debtor. | Case No.: 2:13-bk-28734-TD<br><br>CHAPTER 11<br><br>**MEMORANDUM DECISION REGARDING *NUNC PRO TUNC* ATTORNEYS' EMPLOYMENT AND FEE APPLICATIONS**<br><br>Date:    March 5, 2014<br>Time:    11:00 a.m.<br>Courtroom:   1345 |

  The Law Offices of Thomas F. Nowland (Nowland Office or, simply, Nowland) was retained by chapter 11 debtor MJM Management, LLC (MJM), on July 24, 2013, the date that MJM filed its second chapter 11 bankruptcy petition within a one-year period.  The first case, No. 2:13-bk-11161-TD filed January 15, 2013, was dismissed March 8, 2013, MJM having failed to file schedules or comply with any of the United States Trustee's (UST) 7-day filing requirements.

  The Nowland Office did somewhat better in this case, at least in terms of filing complete schedules on time on August 7, 2013, along with an application for employment of the Nowland Office.  But the UST objected to Nowland's employment

1  application, and the application was not set for hearing, though it was Nowland's
2  responsibility to do so.
3    The schedules filed by MJM claimed that the debtor owned a hotel worth $4
4  million, subject to a debt secured by a first deed of trust with a $1,973,228 loan balance
5  and other loans totaling $300,000, also secured.  In the court's view, MJM's schedules
6  and statement of financial affairs did not look promising for debtor's reorganization
7  prospects.  EXB Holdings 2, LLC (EXB), the holder of the promissory note and first
8  deed of trust securing an actual balance of $2,273,228, filed a motion for relief from the
9  automatic stay on August 7, 2013.
10    On August 14, 2013, the court heard MJM's emergency motion for interim use of
11 cash collateral and EXB's motion for relief from the automatic stay; the court listened to
12 the parties and considered their pleadings and observed that the debtor appeared from
13 its filings to reflect "very little in [the] way of any kind of businesslike operation . . . ." Tr.
14 3:5-6.  In the ensuing discussion, MJM's counsel urged that the chapter 11 petition was
15 filed to protect what MJM believed to be a substantial equity in the real estate against
16 EXB's attempt in state court to have a receiver appointed.  MJM's counsel stated orally
17 that MJM "actually [has] a sale now in escrow.  They have a down payment. . . . They're
18 ready to move forward.  [The buyer is] ready to move forward.  They're going to pay
19 $3.5 million.  The escrow has been opened.  They put a deposit.  All we need is court
20 approval and we can sell the property.  They're going to put $2.6 million down . . . .
21 more than enough money to pay off EXB and everyone else . . . . we'll get court
22 approval for all of this."  Tr. 12:11-21.  The ongoing discussion revealed that there was
23 no agreement in writing, but the deal was real.  The court set deadlines to enable MJM
24 to pursue the sale possibility.
25    Debtor's counsel represented at the August 14 hearing "we have $54,000 in our
26 trust [account] . . . . we've only take[n] $5,000 of that . . . . we only claimed $5,000 of
27 that as our fees for the pre-petition filing.  That other 49,000 . . . . is still their money
28 we're just holding on their behalf.  That is our retainer in the same sense that if this

bankruptcy goes forward, that's something we can bill against but it's still our client's money and it belongs to the bankruptcy estate . . . ." Tr. 14:12-23.

A sale agreement was signed and heard on August 28. The court approved the sale and also granted relief from stay to EXB on its pending motion. EXB was restricted from any foreclosure sale during a period of 30 days from entry of the relief from stay order. EXB was required to be paid pursuant to its reasonable demands at the closing of the MJM hotel sale.

Meanwhile, on August 26, the UST filed a motion to dismiss or convert the case. After the hotel sale agreement was approved, MJM on September 16 filed Notice of Non-Opposition to the UST motion to dismiss. On September 19, MJM fired the Nowland Office and substituted into the case a new attorney on its behalf, the Law Offices of Bradley E. Brook. On October 16, 2013, the case was dismissed with a 180-day bar against any refiling by MJM including a judgment in favor of the UST for fees in the sum of $9,750. Apparently, the sale of the hotel had closed and all prepetition creditors had been paid from a $2.6 million down payment from the buyer, but fees payable to the UST had not been paid.

Nothing further was heard from the Nowland Office until January 28, 2014, when it began filing a flurry of pleadings seeking a retroactive employment order, *nunc pro tunc*, and compensation totaling $52,137.50. The UST filed opposition papers on February 19, 2014, and was joined in its opposition by MJM. The Nowland Office filed a reply on February 26.

The February 19 UST opposition to the Nowland application for employment challenged irregularities in the Nowland application generally as follows. The UST opposition said Nowland's employment had never been approved. Its failure to receive approval might have forfeited Nowland's right to compensation. Nowland delayed about six months after commencement of its work before pursuing approval of its employment. The application was out of compliance with the UST's published guidelines. Ministerial, clerical and administrative services totaling $8,251.25 claimed here were not

compensable. Other time entries totaling an additional $1,057.50 were vague, unreasonable and excessive. See the UST opposition for specifics and citations.

On February 19, 2014, the UST also filed a separate, thoroughly documented challenge to the Nowland Office request for *nunc pro tunc* approval of its employment and fees. The UST opposition was supported by extensive statutory, procedural and decisional authority. In addition, the UST opposition pointed out that the Nowland Office offered no adequate explanation as to why it waited until January 28, 2014 to file its *nunc pro tunc* request. The UST asserted that there was "no good cause for delay" and, thus, that retroactive relief should be denied. The UST also objected that no justification was provided for the Nowland request for approval of employment under 11 U.S.C. § 328(a).

The court agrees with most of these challenges to the Nowland Office's mostly unpersuasive effort to excuse its delay. The court finds that the current Nowland application and motion were dilatory, the result of procrastination, or delayed perhaps to pursue what may have been an improper effort by Nowland to avoid any scrutiny at all by the UST or the court with respect to the disposition of the MJM deposit with Nowland of $49,000 of MJM's money in a Nowland Office trust account.

The Nowland Office reply papers filed on February 26, assert baldly that dismissal of the case in October 2013 terminated the UST's authority, meant that MJM "was never really in bankruptcy . . .," "there is no bankruptcy estate," and finally, contrary to the UST position, that the $44,000 [sic] "cannot be returned to the debtor since there is no longer a debtor, and never really was a debtor." This Nowland explanation is truly a Lewis Carroll caliber fantasy.

Further, Nowland said in its reply that "the reason [Nowland] did not set its previous [August 7, 2013] application for approval of its employment was because of intense pressure put on [Nowland] and MJM to obtain the Court's approval of the sale of the property." This is an utterly unconvincing statement. At the very least, after the Nowland Office was fired on September 18, 2014 and substituted out of the case the

next day, any further delay in following established procedure for seeking approval of employment and approval of its compensation appears to the court to have been either derelict or strategic on the part of the Nowland Office, contrived perhaps to pressure MJM to consent to a private settlement with the Nowland Office.  At the very least, Nowland's tactics bring to mind the provisions of 18 U.S.C. § 155 which makes a crime of any knowing and fraudulent agreement for the fixing of fees in a bankruptcy case payable from the assets of the estate.  The only question here is whether any such agreement would have been subject to provisions of 18 U.S.C. § 155?  Clearly, no such agreement was reached with MJM.

Notwithstanding the foregoing, the court is satisfied that the Nowland Office meant well but performed its professional duties in this case in a clumsy fashion, reflecting perhaps, in its first chapter 11 reorganization filing for a debtor, an inadequate familiarity with generally recognized standards for proposed debtor's counsel in chapter 11 reorganization cases.  Its current, late filed employment application is granted, but subject to § 330, not § 328.  The Nowland Office request to have its fees evaluated under 11 U.S.C. § 328 is denied for the reasons stated by the UST, that is, the application contains no justification for approval for attorneys' fees of the Nowland Office under the alternative standards of § 328.

The court has reviewed the Nowland Office final fee application and time records under the provision of § 330.  As pointed out by the UST, they do not comply with the UST Guidelines.  The court infers that they may have been hastily assembled in January 2014 based on last minute estimates of time expended several months earlier by Nowland Office lawyers or others.  Strikingly, the lawyer time records reflect tasks performed for the most part in even, 1.00-hour or 2.00-hour increments.  As such, they are radically different from the court's usual experience in cases of this sort and with fee applications generally; they lack credibility or persuasiveness as to the actual time expended and as to the contemporaneousness of the preparation of the time records with the tasks performed.

The court nevertheless recognizes that MJM was in dire straits when the Nowland Office undertook the representation of MJM. MJM faced a serious risk of foreclosure by EXB through a state court receivership, or in chapter 11 soon after commencement of MJM's second recent chapter 11 filing. A buyer with $2.6 million cash appeared and the Nowland Office, awkward and clumsy though it may have been, inexperienced in representing a corporate debtor in a chapter 11 case as it may have been, clearly devoted significant, urgently required time to help MJM arrange, document and close a $3.5 million sale in a very short period of time, albeit not to the point of satisfying MJM principals with the quality of its services. Nowland did not satisfy the UST or this court with the documentation of its employment application or fee application. At the same time, the Nowland Office now acknowledges that its August 2013 accounting for money received from MJM was careless; it acknowledged a $10,000 error in reporting the retainer to the UST and to the court.

For all the forgoing reasons, the court believes that an award of $35,200 is reasonable and appropriate. This is the best approximation of reasonable compensation for necessary services that the court can produce to respond to a long overdue and unconvincing fee application filed by the Nowland Office months after the critical services were performed. Attorney billing rates of $375 per hour do not seem to be warranted here, based on the court's records in the case. The court finds that beneficial services were performed for MJM and its bankruptcy estate by the Nowland Office to the extent of $35,200 during the period from July 24 to September 18, 2013, together with incidental later services performed for the benefit of MJM after the commencement of the bankruptcy services of successor counsel on September 19, 2013. In addition, the court awards Nowland $444.92 in reimbursement for actual, necessary expenses. The court sustains the UST objections to a total of $9,308.75 of inappropriate Nowland charges as outlined above at 3:27-4:4.

The award of $35,200 represents 80 percent of the $44,000 retainer finally acknowledged by Nowland, reasonable and fair compensation here given all the

circumstances considered. The balance of $8,800 shall be returned to MJM (1) within 10 days of the date of this order and (2) prior to authorization of the Nowland Office to draw down against the retainer. (3) The sum of $9,750 shall be preserved in the Nowland trust account until such time as the judgment for UST fees in this case is paid to the UST, either from the retainer or otherwise, subject to further order of the court when the UST fees have been paid.

The dismissal of a bankruptcy petition does not deprive the UST of standing to assert his objections. 11 U.S.C. § 307, 28 U.S.C. § 586(a)(3)(A)(i), (A)(ii), (D), and (a)(5). Dismissal did not deprive the court of jurisdiction to evaluate attorneys' fee requests and award attorneys' fees as the court determines to be reasonable, including compensation that is less than the amount requested. *See* 11 U.S.C. § 330(a)(1)(A), (a)(2) and (a)(3). The court's jurisdiction to do so has long been recognized as ancillary or collateral to dismissed bankruptcy cases. *See* U.S.A. Motel Corporation v. Danning, 521 F.2d 117 (9th Cir. 1975); Tasaroff v. Taylor (In re Taylor), 884 F.d 478 (9th Cir. 1989); Moore v. Permanente Med. Gp., Inc., 981 F2d. 443 (9th Cir. 1992); Lindblade v. Knupfer, 322 F.3d 1178 (9th Cir. 2003).

In this case there is every reason for this court to exercise its ancillary or collateral jurisdiction in light of the fact that the Nowland Office signed an agreement with MJM on July 24, 2013, specifically for the purpose of providing legal services to MJM in chapter 11; it accepted a substantial retainer for the purpose; and it filed the MJM chapter 11 case that day. It now seeks approval of its employment by this court and approval of its legal services and an award of final compensation in this case payable out of the retainer it holds. The Nowland Office acknowledges that it is holding in its trust account a $44,000 retainer with which it wishes to be paid for these services. It is practical and sensible that this court exercise its ancillary or collateral authority to consider, review and dispose of the Nowland Office employment application and final fee request pursuant to 11 U.S.C. § 330. This court is in a better position to consider these matters as they arose in MJM's second bankruptcy case, and to resolve them,

than any other court.

    IT IS SO ORDERED.

Date: May 12, 2014

Thomas B. Donovan
United States Bankruptcy Judge

-8-